**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION
IN ADMIRALTY**

**BLUE MARINE SHIPPING SA DE CV,**[1]

      **Plaintiff,**

**v.**                                **Case No. 3:09cv555/MCR/MD**

**GULMAR OFFSHORE MIDDLE EAST LLC,**

      **Defendant.**

_____/

## O R D E R

Pending before the court in admiralty is the motion of Defendant Gulmar Offshore Middle East, LLC, ("Gulmar") to vacate the attachment order (doc. 45), to which Plaintiff Blue Marine Shipping S.A. de C.V. ("Blue Marine Shipping") has objected (doc. 55).  At Gulmar's request, the court held a post-attachment hearing on April 7, 2010, pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.  *See* Supp. Rule E(4)(f).  Also pending before the court is Blue Marine Shipping's motion to dismiss the counterclaim (doc. 31), which Gulmar opposes (doc. 40); and Gulmar's motion to dismiss the amended verified complaint (docs. 39, 58), which Blue Marine Shipping opposes (doc. 52).  Having considered the evidence presented at the hearing, the record, and the arguments of the parties, the court denies the motion to vacate the order of  attachment, denies the motion to dismiss the amended verified complaint, and denies as moot the motion to dismiss the counterclaim.

**Background**

This case arises out of the alleged breach of a charter party agreement involving the vessel *Boa Rover*.  The original verified complaint was filed on December 16, 2009, by

---

[1]  Ocean Mexicana S.A. de C.V. was the plaintiff on the original verified complaint.  Because it substituted Blue Marine Shipping as the sole plaintiff in the amended verified complaint, the court lists only Blue Marine Shipping in this caption.

Ocean Mexicana S.A. de C.V. ("Ocean Mexicana") against Gulmar, both of which are foreign corporations, alleging two counts in admiralty. Count I was an *in personam* contract claim for breach of the maritime charter party, and Count II sought attachment and garnishment of Gulmar's property on board the vessel. In Count I, Ocean Mexicana alleged that it had entered into a written charter party granting Gulmar use of the vessel *Boa Rover,* with monthly charter hire at $58,800 per day; it had delivered the vessel and issued invoices to Gulmar for charter hire; and Gulmar had fallen behind on payments. Ocean Mexicana sought a total of $12,320,635.17 due on the contract through December 16, 2009. The complaint was verified by Gerardo Amado Rodriguez Gaytan, chief financial officer of "Plaintiff Blue Marine Shipping," though the named plaintiff was Ocean Mexicana. For purposes of attachment, the complaint alleged that the property was within this district, and by affidavit, the plaintiff's counsel stated the defendant could not be located within the district. Pursuant to Supplemental Rule B(1) and Local Admiralty Rule B(3)(a), and upon review of the verified complaint and supporting documents, the court ordered the maritime attachment and garnishment of the property on board the vessel (doc. 10).

On January 18, 2010, Gulmar entered a restricted appearance, filing its answer and claim against the property, pursuant to Local Rule B(5)(a) and Supplemental Admiralty Rule E(8).[2] Gulmar alleged in the answer that Ocean Mexicana is not a party to the charter agreement and therefore, Ocean Mexicana is not the real party in interest, lacks standing to sue, and the complaint fails to state an admiralty claim. The answer also states that the attachment was wrongful; that plaintiff did not plead a reasonably definite plan to pursue its claim in a traditional forum; that the complaint was not properly verified; that the equipment was brought to this district without notice to Gulmar and is the result of conversion; and that there is a mandatory arbitration clause requiring arbitration in London, England. The answer includes a provisional compulsory counterclaim – "Abuse of Process and Wrongful Attachment" – wherein Gulmar again alleges that Ocean Mexicana is not a

---

[2] "An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served." Supp. Rule E(8).

party to the charter and acted in bad faith by initiating the attachment and garnishment of Gulmar's property.  Gulmar attached the first two pages of the charter party to the answer.[3]

On February 8, 2010, an amended verified complaint was filed substituting Blue Marine Shipping as the plaintiff in this suit for Ocean Mexicana.  *See* Fed. R. Civ. P. 15(a)(1)(B) (permitting amendment as a matter of course within 21 days after service of a responsive pleading).  The amended verified complaint states substantially the same claims as the original complaint but seeks $21,367,870.76 in contract damages as of January 31, 2010, and includes the same verification of Gaytan, chief financial officer of Blue Marine Shipping.  Blue Marine Shipping also moved to dismiss Gulmar's counterclaim as moot because it was based on allegations that the original plaintiff was not a party to the charter party agreement, and Ocean Mexicana is no longer a plaintiff in the amended verified complaint.  Gulmar moved to dismiss the amended verified complaint on several grounds and moved to vacate the attachment.

A review of the relevant portions of the charter party reveals the following.  The contract is signed by Alfredo Reynoso Durand on behalf of Blue Marine Shipping and Jean Michel Tissier, managing director of Gulmar.  Blue Marine Shipping, noted as the disponent owner[4] of the *Boa Rover*, is referred to in the agreement as "Owner" or "Blue Marine."  A crucial provision in Box 2, on which plaintiff relies, provides that the owner of the vessel for purposes of the charter party is "Blue Marine *or* other subsidiary of the Blue Marine Group" (emphasis added).  In Box 23, the parties direct the mode and place of payment to be

---

[3] Ocean Mexicana's complaint attached the charter party but omitted the first two pages.  Gulmar attached these pages to the answer because they include clear statements that the contract was entered into on February 17, 2008, between Blue Marine Shipping (the disponent owner of the vessel) and Gulmar.  Also, Gulmar filed the sworn declaration of Jean Michel Tissier, Managing Director of Gulmar, in support of its answer (doc. 20), asserting, among other things, that Gulmar never contracted with Ocean Mexicana, only with Blue Marine Shipping, as disponent owner.

[4] "Disponent owner" is the party who has control of a commercial vessel, regardless of whether it is the actual registered owner.  *See Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 468 n.8 (5th Cir. 1984).  "A 'disponent owner' does not hold legal title to a vessel, but for purposes of the charter party acts as if he does."  *Matter of Andros Compania Maritima, S.A.,* 579 F.2d 691, 693 n.1 (1st Cir. 1978); *see also Miss. Val. Barge Line Co. v. Bulk Carriers, Ltd.*, 249 F. Supp. 743, 744 (D. N.Y. 1965) ("No definition of 'disponent owner' has been found but I assume it means a person not the actual owner but legally capable of making a charter of the vessel.").  The Third Circuit recently stated, "[a] 'disponent owner' is the party who originally charters the ship."  *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 539 n.19 (3d Cir. 2009).

simply, "[a]s per invoicing instructions."  Section 20(b) states that the owners may not assign or transfer any part of the charter party without the "written approval" of Gulmar, "which approval shall not be unreasonably withheld;" but this written approval "shall not relieve the Owners of their responsibility for due performance of the part of the services which is sublet or assigned."  Additionally, the charter party is expressly governed by and construed in accordance with English law and any disputes arising out of the charter party must be referred to arbitration in London, England.[5]

On March 17, 2010, Gulmar requested a post-attachment hearing pursuant to Supplemental Rule E(4)(f).  At the hearing, plaintiff (now Blue Marine Shipping) presented the testimony of Gaytan, who is the chief financial officer of three companies – Blue Marine Technology S.A. de C.V. ("Blue Marine Technology"), Blue Marine Shipping, and Ocean Mexicana.  He testified that Blue Marine Shipping and Ocean Mexicana are both subsidiaries of Blue Marine Technology, and he named five other subsidiary companies as well.  According to Gaytan, the companies are collectively referred to as "the Blue Marine Group," however, there is no legal entity bearing that name.  Gaytan stated that Blue Marine Shipping and Gulmar were the original parties to the agreement in February 2008.  Blue Marine Shipping issued one invoice to Gulmar, and some months later, the board of directors made a decision to substitute Ocean Mexicana on the charter party. Ocean Mexicana then began sending the invoices and collecting payment from Gulmar. Gaytan admitted that Ocean Mexicana is not named in the charter party or otherwise specifically identified except for Box 2, which generically references "other subsidiaries" as owners.  Gaytan testified that Ocean Mexicana is a subsidiary of Blue Marine Technology and part of the Blue Marine Group, and therefore had contract rights pursuant to Box 2 and

---

[5]  In motions and responses filed prior to the hearing, the parties informed the court that Blue Marine Shipping had filed an action for breach of this same charter party in the Southern District of New York in June of 2009, and, as part of that case, had attached funds belonging to Gulmar.  The case settled for $1,600,000. *See Blue Marine Shipping S.A. de C.V. v. Gulmar Offshore Middle East, LLC*, No. 09civ5223 (S.D. N.Y. Aug. 11, 2009).  Gulmar paid the proceeds of the settlement to Ocean Mexicana, though Ocean Mexicana was not a plaintiff in that action.  Additionally, the parties informed this court that there is currently a pending arbitration proceeding in London between Blue Marine Shipping and Gulmar.  Information regarding the New York litigation and the London arbitration was not included in the original complaint or the amended verified complaint, however.

by reason of issuing the invoices. Gaytan adamantly asserted that the subsidiaries would not take advantage of the contract language by bringing separate suits against Gulmar on the same claims.[6] Plaintiff's evidence included email correspondence between Gaytan and Gulmar's chief financial officer, in which Gaytan asserted that Ocean Mexicana was an owner under the charter party, referencing Box 2, and instructed Gulmar to pay Ocean Mexicana.[7] Gulmar did pay some of the invoices issued.[8] According to plaintiff's counsel, Blue Marine Shipping also had rights under the charter party, both as the owner who signed the agreement and is named in Box 2, and as continuing warrantor pursuant to paragraph 20(b).

The sworn declaration of Jean Michel Tissier, managing director of Gulmar, states that Gulmar never contracted with Ocean Mexicana and that Blue Marine Shipping entered into the charter party agreement with Gulmar. Gulmar's counsel argued that the plaintiff had not met its burden to show why the attachment should not be vacated because Ocean Mexicana did not have a valid admiralty claim – it was not named in the charter party, there was no valid assignment of contractual rights, and it was a mere payment collector under Box 23, without rights to enforce the contract.

**Discussion**

A charter for hire of a ship is maritime in nature and falls within the court's admiralty jurisdiction. *Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1320 (11th Cir. 1999). Supplemental Rule B(1) provides that attachment and garnishment of the defendant's property is available in a maritime action to attach a defendant's property

---

[6] The court is unaware of what claims on the charter party are involved in the London arbitration or were settled in the New York litigation.

[7] Alternatively, plaintiff alleged that Blue Marine Shipping had orally assigned its rights to Ocean Mexicana, but this allegation was not pled. Blue Marine Shipping asserts that despite Ocean Mexicana had rights under the charter party, it retained rights as warrantor under the charter party, and Gulmar had not objected to invoices sent from Ocean Mexicana.

[8] Plaintiff also offered a draft of an addendum to the charter party to demonstrate Gulmar's approval of Ocean Mexicana exercising rights under the charter party; it provides that Gulmar will issue a letter of credit in favor of Blue Marine Shipping "assignable for the benefit of Ocean Mexicana," but it appears not to have been executed.

located within the district up to the value of the amount sued for, if the defendant is not found within the district.  Additionally, the plaintiff must follow the procedural requirements of the rule as well as Supplemental Rule E to invoke attachment properly, such as filing a verified complaint and affidavit stating that the defendant cannot be found within the district and stating the facts with particularity.[9]  *See Barna Conshipping, S.L. v. 1,800 Metric Tons, More or Less, of Abandoned Steel*, No. 09-0027, 2009 WL 1010212, at *2 (S.D. Ala. 2009) (slip op.).  "The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment."  Supp. Rule B(1)(b).  An attachment issued under Rule B is referred to as a *quasi in rem* proceeding, *see  Transamerica Leasing Inc. v. Amazonica*, No. 97-0556, 1997 WL 834554, at *2 (S.D. Ala. 1997) (slip op.), but "[a] more precise understanding is that a good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*," *Great Prize, S.A. v Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992).  *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1233, 1238 (11th Cir. 2006) (stating Supplemental Rule B "allows the court to exert control over a defendant's property when the defendant cannot be found in the district but the property can").  "Attachment keeps the *res* within the jurisdiction and provides the basis for enforcement of a subsequently entered judgment."  *Great Prize*, 967 F.2d at 159-60; *see also Heidmar, Inc. v. Amonia Ravennate Di Armamento Sp.A. of Ravenna*, 132 F.3d 264, 268 (5th Cir. 1998) (citing *Swift & Co. Packers v. Compania Colobiana Del Carine, S.A.,* 339 U.S. 684, 693 (1950), and stating Rule B attachment secures the defendant's appearance and "assur[es] satisfaction in case the plaintiff's suit is successful").  "[T]he traditional policy underlying maritime attachment

---

[9]  For instance, "the complaint must contain factual allegations to meet the heightened pleading standard of Supplemental Rule E(2)(a)." *Beluga Chartering GMBH v. Korea Logistics Sys., Inc.*, 589 F. Supp. 2d 325, 327 (S.D.N.Y. 2008).  Supplemental Rule E(2)(a) provides that a complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 443 (2d Cir. 2006).  As a result, "the attachment is quite easily obtained." *Id.*

The defendant may challenge the attachment and is "entitled to a prompt hearing[10] at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted."[11]  Supp. Rule E(4)(f).  At the Supplemental Rule E(4)(f) hearing, the plaintiff bears the burden to prove there was reasonable grounds or probable cause for issuance of the writ.  *See Transamerica Leasing Inc.*, 1997 WL 834554, at *2 *; see also 20th Cent. Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997).  The admiralty rules do not prescribe the form of the Supplemental Rule E(4)(f) hearing; the form of the hearing is left to the district court's discretion.  *See Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989).  The court's inquiry focuses on the facts known at the time of the attachment.  *Dannebrog Rederi AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1311 (S.D. Fla. 2001); *Transamerica Leasing*, 1997 WL 834554, at *2.  It is not necessary for a plaintiff to prove its case to survive a motion to vacate the attachment, but the plaintiff must show (1) a valid *prima facie* admiralty claim against defendant; (2) that defendant cannot be found within the district; (3) that defendant's property may be found in the district; and (4) that there is no statutory or maritime bar to attachment.  *McDermott Gulf Operating Co. v. Con-Dive, LLC*, No. 09-0206, 2009 WL 1537871, at *3 (S.D. Ala. 2009) (slip op.) (citing *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445), *aff'd.* 2010 WL 1225958 (11th Cir. 2010) (unpublished); *see also T & O Shipping Ltd. v.*

---

[10]  At the time the hearing was requested in this case, the property already had been detained for nearly three months.  The undersigned was in the midst of a lengthy criminal trial and offered immediately to refer the matter to a magistrate judge for an earlier hearing date, but the parties chose to wait until the criminal trial in district court had concluded.  Thus, the parties agreed to the two-week interval between the request and the actual hearing date.

[11]  The procedure is the same for post-attachment cases and post-arrest cases. *See* Supp. R. E(4)(f), *see also 20th Cent. Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 n.2 (M.D. Fla. 1997).

*Source Link Co.*, No. 06-cv-7724, 2006 WL 3513638, at *2 (S.D. N.Y. 2006); *20th Cent. Fox Film Corp.*, 992 F. Supp. at 1427 (stating "the post-arrest hearing is not intended to definitely resolve the dispute between the parties but only to make a preliminary determination whether there were reasonable grounds" for attachment).[12]  If the plaintiff fails to meet these requirements, the court must vacate the attachment.  *Aqua Stoli*, 460 F.3d at 445.

Before analyzing the four requirements the plaintiff must show to survive a challenge to attachment, however, it is necessary to place the procedural posture of this case in context.  After the attachment and defendant's answer, but prior to the defendant's motion to vacate the attachment, the plaintiff filed an amended verified complaint substituting Blue Marine Shipping as the plaintiff, pursuant to Rule 15 of the Federal Rules of Civil Procedure.  The Federal Rules of Civil Procedure apply to maritime claims, "except to the extent that they are inconsistent with the[] Supplemental Rules."  Supplemental Rule A(2).  Rule 15 permits a party to amend its pleading once as a matter of course, either within 21 days after serving it, or, if the pleading is one to which a responsive pleading is required, within 21 days after service of the responsive pleading.  Fed. R. Civ. P. 15(a)(1).  "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."  *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. and Can.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982); *see also Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (stating the general rule that an amended complaint supersedes the former pleadings and holding that the court looks to the amended complaint to determine whether there is subject matter jurisdiction).  Furthermore, "[a]mendments as of right under Rule 15(a)

---

[12]  The court in *Beluga Chartering GMBH* noted that the majority of courts in the Southern District of New York "have held that the standard for determining whether a plaintiff asserted a 'prima facie admiralty claim' is the 'prima facie standard,' rather than the more demanding 'fair probability' or 'reasonable grounds' standards," following *Aqua Stoli*, 460 F.3d at 445.  The Eleventh Circuit has affirmed a district court's use of the "prima facie" standard without commenting on it.  *See McDermott Gulf Operating Co. v. Con Dive, LLC*, 2010 WL 1225958 (11th Cir. Mar. 31, 2010).  In this case, the defendant cites *Aqua Stoli* and the plaintiff cites cases using the reasonable grounds standard.  The parties, however, make no argument that one standard is substantively different than the other, and the court finds no meaningful difference between them in this case.

operate 'as a matter of course,' and do not require a judicial imprimatur." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 95-96 (1st Cir. 2008) (stating an "amended complaint was filed *as of right* and became the operative complaint without judicial intervention").[13] Additionally, Rule 17(a), which requires the real party in interest to prosecute the case, states that after the substitution of the real party in interest, "the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). Here, the answer to the original verified complaint was filed on January 18, 2010, and the amended verified complaint was filed on February 8, within the 21-day period during which the complaint may be amended as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B). Therefore, leave of court was not required.[14] Because it does not refer to or adopt the original complaint, the amended verified complaint replaces and supersedes the original verified complaint. *See Varnes,* 674 F.2d at 1370 n.6.

Additionally, to the extent Rule 15(c)'s relation back provisions are applicable in this situation, the court finds its requirements are met here.[15] An amendment to a pleading

---

[13]  The court in *Connectu LLC* also emphasized that an amendment as of right is filed before any jurisdictional challenge can be made – whereas here the amendment came after the answer, which challenged the court's admiralty jurisdiction. However, the court finds *Connectu LLC* distinguishable on that point because there the court was construing the former Rule 15(a), in which the time for amending as of right terminated upon the filing of a responsive pleading. Under the current rule, amendment of a complaint is permitted once as of right within 21 days after service of the responsive pleading, so the rule assumes a jurisdictional challenge might be made and subsequently corrected by substituting an amended complaint. The language to the new rule is plain, and additionally, the notes accompanying the 2009 Amendments plainly state, "the right to amend once as a matter of course is no longer terminated by service of a responsive pleading."

[14]  Although Rule 21 requires leave of court before parties are added or dropped, in this circuit, Rule 15(a) is given precedence. *See McLellan v. Miss. Power & Light Co.*, 526 F.2d 870, 872-73 (5th Cir. 1976), *vacated in part on other grounds*, 545 F.2d 919, 922 n.3 (5th Cir. 1977) (en banc); *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting the case law of the former Fifth Circuit developed before October 1, 1981, as precedent for this circuit). Therefore, Rule 15's provision permitting amendment as a matter of course governs this situation, and leave to amend was not required.

[15]  The purpose of the Rule 15(c) relation back of amendments is to allow a plaintiff to avoid the preclusive effect of a statute of limitation. As such, it has no direct application here. *See Connectu LLC v. Zuckerberg*, 522 F.3d 82, 94 (1st Cir. 2008) (noting a complaint amended as of right did not "cure" a defect through the relation back of Rule 15(c), "[i]nstead, it replaced the original complaint in its entirety," also noting "case law indicates that a court may sometimes constitutionally exercise jurisdiction over a case even though it does not secure solid jurisdictional footing until *after* the case has been brought").

relates back to the date of the original pleading when the amendment asserts a claim arising out of the "conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading," or changes a party against whom a claim is asserted if the party (1) "received such notice of the action that it will not be prejudiced in defending on the merits," and (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(B), (C). Although Rule 15(c) does not speak directly to the relation back of amendments substituting a new plaintiff, the Advisory Committee's Notes to the 1966 Amendment state that the problem is "generally easier" when a plaintiff is substituted, and the rule "extends by analogy to amendments changing plaintiffs." The amended verified complaint states the same claim against Gulmar as the original verified complaint (breach of contract for charter hire), and although it substitutes the plaintiff, there is no doubt Gulmar was on notice at the time the original complaint was filed that Blue Marine Shipping was a party to the contract with Gulmar, and there is therefore no prejudice to Gulmar. Gulmar argues that if Ocean Mexicana was not a party to the contract, it had no right to bring suit for its breach. "It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." *Cibron Enter., Inc. v. BP Prods. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1251-52 (S.D. Fla. 2005). Nevertheless, a substitution of plaintiff in circumstances where the original complaint's factual allegations regarding the events or the participants are not altered does not prejudice the defendant, especially where leave to amend is not yet required. *See id.* (permitting leave to amend the complaint though the original plaintiff lacked privity of contract). Although the original complaint omitted reference to Blue Marine Shipping, the charter party itself was attached to the original complaint, and it clearly names Blue Marine Shipping and is signed by Blue Marine Shipping. At this early stage, where the amendment was permitted as of right and the original factual allegations did not change, there is no bar to the plaintiff substituting another in its place. The amended verified complaint is now the operative pleading in this case.

Thus, in light of the amended verified complaint, the issue in the motion to vacate is whether the plaintiff, now Blue Marine Shipping, can demonstrate why the attachment should not be vacated pursuant to Supplemental Rule E(4)(f).  The only factor at issue is whether the plaintiff has stated a *prima facie* admiralty claim against defendant Gulmar.[16] In considering whether to vacate the attachment where the complaint has been amended, the relevant time remains the time of the original filing.  *See Am. S.S. Owners Mut. Protection and Indem. Ass'n v. Dann Ocean Towing,* Inc., No. CCB-08-2195, 2008 WL 5685315 (D. Md. 2008) (stating the request for attachment of the amended complaint relates back to the attachment request in the original complaint); *Caribbean Yacht Works, Ltd. v. M/V NEENAH Z*, 410 F. Supp. 2d 1261, 1266 (S.D. Fla. 2005) (stating the facts are determined as of the time of the original filing).  The amended verified complaint states an *in personam* breach of maritime contract claim by Blue Marine Shipping against Gulmar for breach of the charter party attached to the complaint.  The face of the charter party plainly states that the contract is between Blue Marine Shipping and Gulmar, consistent also with the evidence at the hearing.  Gulmar acknowledges that it contracted with Blue Marine Shipping and that Blue Marine Shipping is the appropriate party to assert a breach of the charter party. (Doc. 58, at 3.)  Thus, Blue Marine Shipping has demonstrated a valid *prima facie* maritime breach of contract claim, justifying the continued attachment of Gulmar's equipment.

Gulmar asserts the attachment order must be vacated because it is improper to retroactively amend the attachment, which Gulmar asserts was wrongful, in bad faith, and based on deficient pleadings, by filing an amended verified complaint.  The court disagrees.  *See Caribbean Yacht Works*, 410 F. Supp. 2d at 1265-68 (permitting an amendment to the complaint prior to the post-attachment hearing converting a Rule C attachment into a Rule B attachment and requiring the facts to be considered as of the time

---

[16]  The parties do not dispute the other three factors necessary to survive a motion to vacate attachment, i.e., that Gulmar was not located in the district, that defendant's property was located in the district, and that there is no statutory or maritime bar to attachment.  *See McDermott Gulf Operating Co.*, 2009 WL 1537871, at *3.

the complaint was filed).  As noted, the Federal Rules of Civil Procedure apply in admiralty so the amended complaint is now the operative pleading.  The facts at issue have not changed since the time of the attachment.  At that time, as now, Blue Marine Shipping was the signatory to the charter party.  There is no reason to consider whether Ocean Mexicana stated a valid admiralty claim because it is clear that Blue Marine Shipping has.[17]  While heightened pleading requirements exist under the Supplemental Rules, *see Beluga Chartering GMBH v. Korea Logistics Sys., Inc.*, 589 F. Supp. 2d 325, 327 (S.D.N.Y. 2008), and the court does not condone the many deficiencies presented in the original "verified" complaint, the original pleading was sufficiently particular for the defendant to formulate an answer and the facts do not indicate that the original pleading was filed in bad faith. The relevant facts were appended to the complaint in the charter party and the invoices, the relevant facts were fully known to Gulmar, and the amended verified complaint has now properly replaced the original.

Gulmar also moves to dismiss the amended verified complaint  for lack of admiralty jurisdiction and lack of standing, among other things, but Gulmar's arguments all stem from the original verified complaint.  The court has already concluded that the amended verified complaint was properly filed as of right within 21 days of the answer pursuant to Rule 15(a) and completely replaced the original verified complaint.   The case cited by Gulmar indicating that it is improper to substitute a plaintiff when the original plaintiff lacks standing, *see, Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, *aff'd*, 252 F.3d 1320 (Fed. Cir. 2001), involved a motion to amend the pleading under the prior version of Rule 15(a); as already discussed, under the current rule, leave to amend was not required in this case. Additionally, the longstanding rule cited by Gulmar that "if jurisdiction is lacking at the commencement of the suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim," *Pressroom Unions-Printers League Income Sec. Fund v. Continental*

---

[17]  The court will not reiterate the defects in the original complaint because the plaintiff corrected them as of right in the amended verified complaint before the motion to vacate the attachment was filed.  Therefore, any defects in the original verified complaint alone are not a proper basis on which to vacate the attachment in this case.

Case No. 3:09cv555/MCR/MD

*Assur. Co.*, 700 F.2d 889, 893 (2d Cir.), *cert. denied*, 464 U.S. 845 (1983), likewise does not apply where the amendment is of right.  *See Pitando,* 501 F.3d at 1243 (noting an amended pleading supersedes the former and the original is no longer a part of the litigation); *see also Connectu LLC*, 522 F.3d at 94 (noting a complaint amended as of right did not "cure" a jurisdictional defect but "replaced the original complaint in its entirety").  As noted above, Ocean Mexicana validly amended its complaint and that amended verified complaint now controls making it unnecessary to determine whether Ocean Mexicana had standing under the original verified complaint.  The amended verified complaint is not deficient under the heightened admiralty pleading rules, Blue Marine Shipping has standing, and the complaint properly invokes this court's admiralty jurisdiction.  The court accordingly denies the motion to dismiss the amended verified complaint.  The court also denies as moot the motion to dismiss the counterclaim.  Gulmar must file a new answer to the amended verified complaint.

Accordingly, it is hereby ORDERED:

1.      Defendant Gulmar's motion to vacate the order directing attachment and garnishment (doc. 45) is DENIED.

2.      Defendant Gulmar's motion to dismiss the amended verified complaint (doc. 39) is DENIED.

3.      Blue Marine Shipping's motion to dismiss the counterclaim (doc. 31) is DENIED as moot, and Gulmar is instructed to file an answer to the amended verified complaint within 14 days after notice of this order, pursuant to Fed. R. Civ. P. 12(a)(4)(A).

**DONE AND ORDERED** on this 26th day of April, 2010.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**